IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LAUREN LAVALLIER, INDIVIDUALLY AND ON BEHALF OF**
**HER DAUGHTER, J.L.G., A MINOR**                                            **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO.:** 1:21cv337 TBM-RPM

**THE UNITED STATES OF AMERICA**                                              **DEFENDANT**

**ORIGINAL COMPLAINT FOR DAMAGES**
**UNDER THE FEDERAL TORT CLAIMS ACT**

Lauren Lavallier, individually and on behalf of her daughter, J.LG., a minor, respectfully represents:

**I.**

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

1.      Plaintiff, Lauren Lavallier, on behalf of her minor daughter, ▮▮▮▮▮▮ ▮▮▮ (hereinafter referred to as J.LG.), is a citizen of the United States, of the full age of majority, domiciled and residing in Hancock County, Mississippi. She is the Chancery Court appointed Guardian of the minor who has been authorized to prosecute this action on behalf of the minor.

2.      The United States of America is made a defendant for acts and omissions of the Coastal Family Health Center, Inc., a Health Center Program grantee under 42 U.S.C 254b, and its employees, who are deemed to be Public Health Service employees under 42 U.S.C. 233(g)-(n). At all times pertinent hereto, Coastal Family Health Center and their employees were deemed to be federal employees at the time of the wrongful conduct alleged.

3.      The physicians and staff of the Coastal Family Health Center, whose acts and omissions are referenced herein, were the employees and agents of the Defendant, the United

States of America, acting within the scope of their employment and in conjunction with the Coastal Family Health Center, Inc.

4.  This Court is vested with jurisdiction over this action against the United States as defendant pursuant to 28 U.S.C. § 1346(b), commonly referred to as the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401(b).

5.  Pursuant to 28 U.S.C.A. § 2675(a), Plaintiff sent a Form 95 Claim for Damage, Injury, or Death, a description of the medical summary and basis of the claims, supporting medical records, birth certificate, and attorney/client representation agreement with the United States Department of Health and Human Services on April 11, 2019 and delivery was confirmed on April 15, 2019.

6.  Pursuant to 28 C.F.R. § 14.2, on December 9, 2020, Plaintiff sent an Amendment to Sum Certain to the United States Department of Health and Human Services, and delivery was confirmed on December 15, 2020.  Six months having lapsed from delivery, Plaintiff has received no acceptance or rejection to its Amendment to Sum Certain or to its or the original Form 95 Claim for Damage, Injury, or Death sent on April 11, 2019.

7.  Venue is proper because the negligence of the agents and employees of Defendant, the United States of America, causing the injury alleged herein occurred within this District.

8.  Plaintiff, Lauren Lavallier, on behalf of her daughter, J.LG., a minor, satisfied the jurisdictional prerequisites of 28 U.S.C. §2675(a) by timely filing administrative claims against Coastal Family Health Center which have not been accepted or rejected.

## II.

## EVENTS FORMING THE BASIS OF THE CLAIMS

9. The minor patient, J.LG., was delivered on ███████ 2017 via emergency c-section at 38 weeks, due to her failure to progress.

10. Starting on April 21, 2017, Lauren Lavallier presented with J.LG. to Coastal Family Health for a for a 10-day wellness checkup following her birth by Shama Shakir, M.D., a pediatrician. The head circumference was 36 cm.

11. On the one-month checkup on May 11, 2017, the baby had an abnormally large head circumference of 38.50 cm, which had abnormally increased more than 2 cm since the 10-day visit. The standard of care applicable to a pediatrician in this circumstance required Dr. Shakir to obtain a neurology consult due to the abnormal circumference and abnormal growth rate, but she failed to do so.

12. During the course of her visits over the baby's first year of life, Dr. Shakir measured J.LG. head size several times, and the child's head circumference consistently increased at abnormal rates. However, over the course of these visits, Dr. Shakir did not take any action consistent with the standard of care applicable to a pediatrician treating a patient with abnormal head size and growth rate.

13. In some of these visits, under physical exam, the patient's chart is often marked with a "*" and does not have a "normal" finding as indicated next to the other examination areas.

14. It was not until a twelve-month wellness visit to Dr. Shakir on April 11, 2018, that Dr. Shakir noted the patient had a "large head," and that there was "delayed attainment of expected physiological development stage." Dr. Shakir also noted that she would "refer to neurology as concerned about her big head and delayed development," but did not take adequate measures to

secure the referral with the urgency the situation demanded. The patient's head circumference was 51 centimeters at this point.

15. On April 18, 2018, Dr. Shakir noted she had referred J.LG. to a neurologist, but On May 17, 2018, Dr. Shakir noted the "neurologist will not see until October." Physical exam notes noted the skull as "large head." The ears notes indicate "TM-left, dull, erythematous." The patient's head circumference was 52.07 centimeters.

16. On May 23, 2018, physical exam notes of Dr. Shakir state "gen hypotonia," and the assessment noted that the patient had "delayed attainment of expected physiological development stage." J.LG.'s patient's head circumference was 50.80 centimeters.

17. After a May 24, 2018 head CT was performed at Memorial Hospital at Gulfport, the patient was diagnosed with hydrocephalus, and on May 29, 2018, J.LG.'s head circumference was 53.5 centimeters.

18. J.LG. was referred to Children's Hospital of New Orleans. On June 5, 2018, the patient's problem list included: "hydrocephalus, development delay, dandy walker malformation, S/P VP shunt, problems with hearing, hyperreflexia, hypertonia, and hygroma." A valve shunt was placed on June 25, 2018.

19. By October 16, 2018, a brain MRI showed shunted hydrocephalus with moderate ventriculomegaly which was decreased in size from June 29, 2018. There was a development of a large right subdural hygroma. J.LG.'s head circumference was 55.5 centimeters.

20. On November 27, 2018, an MRI revealed slightly decreased right subdural hygroma with mildly increased shunted hydrocephalus. Again noted was the Dandy-Walker spectrum.

21. On January 17, 2019, an examination at Children's Hospital revealed that the patient had problems with her hearing, hyperreflexia, and hypertonia. The patient's head circumference was 55.8 centimeters.

22. On February 5, 2019, J.LG. head circumference was still at 55.5 centimeters. Despite reprogramming her shunt, Dr. Volk at Children's Hospital noted that "Patient's head circumference is still quite large she is still developmentally delayed and I do believe that reprogramming her shunt in the setting of a hygroma would not be of best interests."

23. On February 8, 2019, among other issues, the patient's motor skills were still delayed, and an ear problem was noted.

24. On March 18, 2019, the patient had an audiology evaluation. It was noted the patient had hygroma.

25. J.LG. has undergone continuing therapy and treatment, and she suffers from the permanent, long-term effects of the above-detailed injuries. She suffers from and will suffer significant development delays in adaptive behavior, personal-social skills, communication, motor skills, and cognition.

### III.

### FIRST CLAIM

26. Plaintiff incorporates by reference herein all allegations set forth above.

27. The employees and agents of the Defendant, the United States of America, including the nursing staff who cared for and treated J.LG. at Coastal Family Health Center, had an independent and/or concurrent duty to advocate for the patient, and to convince Dr. Shakir that imaging and neurology consultation should be ordered due to the patient's head size.

28. The repeated failures of Dr. Shakir to order imaging of the patient's brain and neurology consultation before May 2018, which resulted in the patient suffering with

hydrocephalus for months before receiving a diagnosis and having a VP shunt placed to relieve the patient's brain swelling due to excess buildup of cerebrospinal fluid, were deviations from the standard of care.

29. Even when the baby exhibited developmental delays and had other neurological findings, Dr. Shakir failed to obtain prompt imaging and refer the patient to a neurologist. This failure when the patient's head circumference measurements were abnormal, and when the child exhibited developmental delays, was a deviation from the standard of care.

30. Dr. Shakir and/or other agents or employees of Coastal Family Health Center were negligent, and they were in deviation from the standard of care for failing to order imaging and a neurological referral despite the patient's abnormal head size and her developmental delays.

31. As a result of the acts and omissions outlined above, the patient suffered from a buildup of intracranial fluid pressure in her brain, which caused brain injury. To date, the patient is unable to walk with balance. She requires assistance from at least one person to walk. Her verbal skills remain limited, as she can only speak a few, rudimentary three-word sentences. The patient also suffers from three stress marks that developed on her skull before the time of her first shunt. These areas, caused by the fluid buildup and head swelling, leave the patient susceptible to death, should she fall or hit her head on those marks. The untreated fluid buildup also caused the patient to develop an abnormally large head that will not decrease in size. Had an imaging / neurology referral been ordered sooner, the patient's head would have been shunted sooner, and the brain injury resulting from the untreated hydrocephalus would have been ameliorated if not avoided altogether.

32. As a direct and proximate result of the negligent acts of the agents and employees of the Defendant described herein, J.LG. did not receive timely care which has resulted in severe and permanent brain injury.

## IV.

## DAMAGES

33. J.LG. has suffered general and special damages to be proven at trial that include, but are not limited to, injury and illness, pain and suffering, loss of enjoyment of life, humiliation, anguish and emotional distress, disfigurement, past, present and future medical and life care expense, loss of earnings and earning capacity, and other economic and noneconomic damages in the amount of $14,500,000.00.

34. Further, as a direct and proximate result of the acts of negligence alleged herein, Plaintiff, Laura Lavallier, has individually sustained damages for the injury sustained by her minor daughter, loss of consortium, interference with familial relationship, loss of earnings and/or value of her services, and will continue to suffer these losses in the future all to her damage in the amount of $500,000.00.

## V.

## PRAYER FOR RELIEF

35. WHEREFORE Plaintiff is entitled to judgment against the United States, and does hereby pray that judgment be entered in her favor, and against the United States of America, as follows:

36. The sum of $15,000,000.00, and further pray for costs, fees and such interest as allowable by law, and for such further relief as this court may determine just and proper.

                                    **Respectfully submitted,**
                                    **Laura Lavallier, Individually and on Behalf of her Daughter, J.LG., a Minor**

**Through:**      _s/*David A. Bowling*_____
                         **DAVID A. BOWLING (MS Bar No. 99121)**
                         The Bowling Law Firm, APLC
                         1615 Poydras Street, Suite 1050
                         New Orleans, Louisiana 70112
                         Telephone: (504)586-5200
                         Facsimile: (504)586-5201
                         Email: dab@lawbowling.com
                         (Main Office)

                         and

                         1323 28th Avenue, Suite A
                         Gulfport, Mississippi 39501
                         Telephone: (800)620-1287
                         Facsimile: (228)575-4006
                         (Mississippi Office)

## **CERTIFICATE OF CONSULTATION PURSUANT TO MCA §11-1-58**

     David A. Bowling, undersigned counsel, the attorney of record for the Plaintiff, has reviewed the facts of the case and has consulted with at least one expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence, and who the attorney reasonably believes is knowledgeable in the relevant issues involved in this particular action, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

                                                     _s/*David A. Bowling*_____
                                                     **David A. Bowling**
                                                     **(MS Bar No. 99121)**